IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CONTINENTAL CASUALTY COMPANY, a/k/a CNA, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 04-1587 ) |
| RICHARD SLONCHKA, | ) ) ) |
| Defendant. | ) |

## OPINION and ORDER

COHILL, D.J.

Plaintiff Continental Casualty Company ("CNA") brought this action against defendant Richard Slonchka, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*. and claims of common law fraud.

We have jurisdiction over claims arising under a federal statute under 28 U.S.C. § 1331.

Before the Court is defendant's motion to dismiss the second amended complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) (Doc. 14). Plaintiff has filed a brief opposing the motion (Doc. 16). Having considered the parties' arguments as well as the applicable law, for the reasons set forth below we will deny defendant's motion.

### I. **Background**

On a motion to dismiss under Rule 12(b)(6), we take the facts as averred in the second amended complaint ("Am. Compl."), which includes the RICO Case Statement ("RCS") in this case (Doc. 10).

Defendant Richard Slonchka was employed as a senior claims adjuster in the Pittsburgh, Pennsylvania office of Universal Underwriters Insurance Company ("Universal"), a subsidiary of Zurich American Insurance ("Zurich"), from August 24, 1993 through June 10, 2002. (Am. Compl. at ¶¶ 3, 6, 7.) (We will jointly refer to Zurich and Universal as "Universal.") As a workers' compensation claims adjuster, Slonchka was responsible for authorizing various types of

payments related to claims including payment of medical expenses, investigation expenses, reimbursements to attorneys, and payment of claims. For a period of time, he was a custodian of blank bank drafts, which could be manually prepared. (Am. Compl. at ¶ 7).

Between April 15, 1997 and April 26, 2002, Slonchka issued or caused to be issued bank drafts or fraudulent checks on 253 different occasions. (Am. Compl. at ¶ 8). He represented to Zurich that these payments were part of the normal claims process and were related to claims for which the defendant was responsible. However, the fraudulent checks were not part of the claims process and were not related to the workers' compensation claims. Defendant used them to personally acquire sports memorabilia, automobiles, and cash kickbacks. (Am. Compl. at ¶¶ 9, 13).

The sum of the fraudulent checks was $644,976.87. (Am. Compl. at ¶ 18).

Defendant attributed the fraudulent checks to various workers' compensation claims which had not been opened and closed in the same calendar year, and therefore were not subject to Universal's regular audit program and unlikely to be discovered except by accident. (Am. Compl. at ¶ 10).

Plaintiff alleges that Slonchka acted with the intent to deceive Universal into believing that it was making legitimate payments related to bona fide claims, so that the defendant could appropriate the monies or make purchases for his own use. (Am. Compl. at ¶ 25).

On or about May 31, 2002, Slonchka was out of work on disability. A temporary claims adjustor who was assigned to his claims noticed that a file had two lump sum final payments entered. One payment was to the claimant and the other was to a person who did not appear to be related to the claim. (Am. Compl. at ¶ 14, 15). Eventually, a complete audit of the claims for which the defendant was responsible was conducted. (Am. Compl. at ¶ 15).

The audit revealed that on about 253 different occasions, Slonchka either personally issued fraudulent bank drafts or caused Universal to issue them. These drafts were made payable to various companies and individuals, including Chuck Thomas Enterprises, Cochran Automotive,

Daniel Naiman, Daniel Naiman, Esq., Daniel Warner, Daniel Warner, Esq., David Pfaff, David Pfaff, Esq., Dr. George Rincon, Frank Mazur, George Rincon, M.D., No. One Cochran, Karl Diego, Esq., The Medicine Shoppe, Thomas Anthony, and Giant Eagle Pharmacy. (Am. Compl. at ¶ 8).

The complaint alleges that the defendant negotiated the fraudulent drafts in conjunction with the above-named individuals. (Am. Compl. at ¶ 12). As an example, some of the drafts were made payable to Daniel Warner, Esq., an individual who is not an attorney. These checks were endorsed "The Puck Stops Here," which is a sports memorabilia store operated by Daniel Warner. Attachment 2 to the RCS is a listing of fraudulent drafts, dates, payees, and the manner in which they were endorsed. (Am. Compl. at ¶ 13.1).

On June 10, 2002, Slonchka was interviewed by Universal's investigators and admitted that he had caused the fraudulent drafts to be issued, and that many had been negotiated with various sports memorabilia dealers. He further admitted that he had made false entries into Universal's filing system with regard to these fraudulent checks. (Am. Compl. at ¶ 16).

Slonchka told the investigators that the payments were for confidential information concerning the workers' compensation claims, and that this information was used to favorably settle cases. (RCS at ¶ 4).

Plaintiff Continental Casualty Company ("CNA") and Lloyd's of London ("Lloyd's") had issued various employee fidelity policies to Universal. Under the CNA policy, CNA was responsible for $117,881.87 of the loss. (Am. Compl. at ¶¶ 19, 20). Pursuant to its policy, Lloyd's paid Universal $235,763.74. (Am. Compl. at ¶¶ 21, 22). Universal issued an assignment to CNA and Lloyd's for the total amount paid by the insurers, and to collect the total amount of the loss. Lloyd's decided not to pursue a subrogation claim against Slonchka, and is not a party to this action. (Am. Compl. at ¶¶ 23, 24).

CNA brought this action on May 25, 2004 in the Court of Common Pleas of Allegheny County, Pennsylvania, alleging common law fraud and violations of the federal RICO statute.

Defendant removed the case to this court on October 15, 2004. Defendant then filed a motion to dismiss, and we ordered the plaintiff to file a RICO Case Statement as an amended complaint. Defendant filed a renewed motion to dismiss. Plaintiff filed a brief in opposition, as well as a motion seeking to file a second amended complaint and amended RICO Case Statement. Defendant has now filed a motion to dismiss plaintiff's second amended complaint, and plaintiff has filed a brief in opposition to that motion.

## II. Motion to Dismiss Standard

A motion to dismiss tests the legal sufficiency of the complaint. A complaint may be dismissed only where no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984). The averments must be viewed in the light most favorable to the plaintiff, and all well-pleaded allegations of the complaint must be accepted as true. *Neitzke v. Williams*, 490 U.S. 319 (1989). We need not, however, accept as true unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegation. *Miree v. DeKalb County, Ga.*, 433 U.S. 25, 27 n. 2 (1977); *City of Pittsburgh v. West Penn Power co.*, 147 F.3d 256, 263 n. 13 (3d Cir. 1998).

In deciding a motion to dismiss, courts generally consider only the allegations contained in the complaint, any exhibits attached to the complaint, and matters of public record. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d at 1384, n. 2; *Pension Benefit Guaranty Corp. v. White*, 998 F.2d 1192, 1196 (3d Cir. 1993); 5A C. Wright & A. Miller, Federal Practice and Procedure § 1357, at 299 (2d ed. 1993).

## III. Analysis

Slonchka asserts several bases for his motion to dismiss CNA's complaint: violation of the applicable statutes of limitations, failure to join an indispensable party as required by Fed. R. Civ. P. 12(b)(7) and 19, failure to adequately allege a pattern of racketeering activity through the commission of two predicate acts, failure to show proximate cause, failure to state a claim of

conspiracy under the RICO statute, and the failure to sufficiently plead common law fraud. We will address these arguments in turn.

### A.  Statute of Limitations

Slonchka first asserts that CNA's claims are barred by the applicable statutes of limitations. Although the statute itself does not specify a statute of limitations, the United States Supreme Court has held that a four-year period applies to civil RICO cases. *Agency Holding Corp. v. Malley-Duff Assoc.*, 483 U.S. 143, 156 (1987). The Court of Appeals for the Third Circuit has determined that the statute begins to run when "a plaintiff has discovered or, by exercising reasonable diligence, should have discovered (1) that he or she has been injured, and (2) that this injury has been caused by another party's conduct." *Forbes v. Eagleson*, 228 F.3d 471 (3d Cir. 2000) ( *quoting Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1386 (3d Cir. 1994)).

Applying the injury discovery rule to the facts alleged in the amended complaint, we find that plaintiff's RICO claims are not time-barred. Slonchka's allegedly fraudulent conduct was not discovered until May 31, 2002, when a temporary insurance adjuster handling the defendant's claims noticed a final lump sum payment which appeared to be unrelated to the claim file. A subsequent audit of all claims for which Slonchka was responsible revealed the allegedly fraudulent behavior which is the basis for this lawsuit. Moreover, Universal could not reasonably have discovered the conduct earlier than it did, because the defendant made the fraudulent drafts appear to be related to workers' compensation claims. He also made false entries in the claim records concerning the reasons for these payments, and backdated the entries. In addition, he selected claims which had not been opened and closed in the same calendar year, so that they would not be subject to Universal's regular audit program. The praecipe for writ of summons was filed on May 25, 2004, well within the four-year statute of limitations. Thus Count I of the complaint is not time-barred.

We also conclude that Count II, which alleges common law fraud, is not barred by the statute of limitations. Under Pennsylvania law, fraud claims are subject to a two-year statute of

limitations, and the discovery rule determines when the statute begins to run. 42 Pa. C.S.A. 18 § 5524; *Bohus v. Beloff*, 950 F.2d 924-25 (3d Cir. 1991). Universal discovered defendant's conduct on May 31, 2002, and the praecipe for writ of summons was filed on May 25, 2004. This is within the two-year timeframe, and, for the reasons set forth above, Universal could not have discovered the irregularities earlier. Accordingly, we find that Count II is not barred.

### B. Failure to Join an Indispensable Party

Defendant next argues that the complaint should be dismissed for failure to join Lloyd's of London as a necessary party. Additionally, he asserts that "accomplices" Mazur, Naiman, Warner and Pfaff should be named.

Rule 19(a) provides as follows:

> [a] person who is subject to service of process or whose joinder will not deprive the Court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief can not be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a)

We agree with the plaintiff that we need not dismiss this complaint under Rule 19. Lloyd's has elected not to pursue a subrogation claim against Slonchka and has closed its file on this claim. There is no risk of duplicative litigation or of potentially inconsistent obligations.

As to Mazur, Naiman, Warner and Pfaff, these are a few of the payees who are alleged to have negotiated fraudulent drafts. Plaintiff is not required to name co-conspirators in the complaint, and defendant's argument to the contrary is without merit.

CNA has not failed to join an indispensable party under Rule 19, and defendant's motion to dismiss will be denied as to that ground.

### C. Failure to State a Claim under RICO

6

Count I alleges that the defendants engaged in racketeering conduct in violation of 18 U.S.C. §§ 1962 (c) and (d), the federal RICO statute.

RICO provides a private right of action for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964 (c). In order for a plaintiff to recover damages under the RICO statute, the complaint must aver a violation of Section 1962 (a), (b), (c), or (d), as well as an injury to business or property by reason of this violation. Slonchka argues that we must dismiss the amended complaint because CNA has failed to state a claim under either Section 1962 (c) or 1962 (d).

### (1) Section 1962 (c)

Section 1962 (c) prohibits:

> any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962 (c)

A claim alleging a pattern of racketeering under Section 1962 (c) requires proof of the following four elements: (1) the existence of an enterprise engaged in or affecting interstate commerce; (2) that the defendant was employed by or associated with the enterprise; (3) that the defendant participated, directly or indirectly, in the conduct or the affairs of the enterprise; and (4) that the defendant participated through a pattern of racketeering activity that must include the allegation of at least two racketeering acts. *Annulli v. Panikkar*, 200 F.3d 189, 198 (3d Cir. 1999); *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162,1165 (3d Cir. 1989). To survive a motion to dismiss, then, plaintiffs must properly allege each of these prongs.

We are satisfied that CNA has properly alleged the first three elements of its Section 1962 (c) claim. CNA describes the enterprise in this case as Slonchka's former employer, Universal, and states that the plaintiff is separate from the enterprise. RCS at 14-16, ¶ 6. The defendant was employed by Universal, and participated in the conduct Universal's affairs as a claims adjustor, including directing that checks be issued to insured parties, claimants, service providers, and

vendors through the company's computerized payment systems. *Id*. Slonchka does not dispute these allegations. He does argue that there is no evidence that he was acting in anything other than his corporate capacity as an agent of the corporation or for his own benefit, and therefore is not separate from the RICO enterprise. We reject this argument. The amended complaint and RCS describe Slonchka's conduct as being separate from Universal's ordinary business practices, and allege that Universal received no benefit from this activity and that the defendant himself benefitted from his own conduct by receiving sports memorabilia, automobiles, and possibly kickbacks. Absolute proof is not required at this stage of these proceedings, and these allegations are sufficient to withstand a motion to dismiss.

Defendant also asserts that CNA cannot establish the fourth element of its claim because it has failed to adequately allege a pattern of racketeering activity through the commission of two predicate acts, failed to show proximate cause, and failed to specify loss.

The framework for establishing a "pattern of racketeering activity" under the federal RICO statute has a number of distinct components. It requires allegations that the defendants have committed at least two underlying predicate acts, as set forth in 18 U.S.C. § 1961 (1). In addition, these alleged acts must show a "pattern." In *H.J. Inc. v. Northwestern Bell Tel. Co.*, the Supreme Court held that to be considered a "pattern," the predicate acts must be related and must constitute a threat of "*continuing* criminal activity." 492 U.S. 229, 240 (1989) (emphasis in original); *Sedima*, 473 U.S. 479, 496 n. 14 (1985). "'It is this factor of continuity plus relationship which combines to produce a pattern.'" *H.J. Inc.*, 492 U.S. at 239 (internal citations omitted). Acts are sufficiently related when they have "'the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Hindes v. Castle*, 937 F.2d 868, 872 (3d Cir. 1991) (quoting *H.J. Inc.*, 492 U.S. at 240). Furthermore, a plaintiff must show causation.

To maintain this element of its RICO claim, then, CNA must allege at least two underlying predicate acts, a pattern of racketeering activity showing both a relationship between the predicates

and continuity, and causation.

**CNA has alleged at least two underlying predicate acts.**

CNA has sufficiently alleged at least two predicate acts.

In its RICO Case Statement, CNA alleges predicate acts of mail fraud in violation of 18 U.S.C. § 1341, and wire fraud in violation of 18 U.S.C. § 1343. Both of these constitute predicate offenses under 18 U.S.C. § 1961(1) (A).

The federal mail fraud and wire fraud statutes share the same essential elements, except that wire fraud applies only to interstate or foreign transmissions. *Carpenter v. United States*, 484 U.S. 19, 25 n. 6 (1987) (applying same analysis to both sets of elements); *United States v. Frey*, 42 F.3d 795, 797 n. 2 (3d Cir. 1994). To allege mail or wire fraud, plaintiff must describe (1) the existence of a scheme to defraud, (2) the use of the mails or the wires in furtherance of the fraudulent scheme, and (3) culpable participation by the defendants. *Emcore Corp. v. Pricewaterhouse Coopers LLP*, 102 F.Supp.2d 237, 245 (D.N.J. 2000) (citing *United States v. Hannigan*, 27 F.3d 890, 892 (3d Cir. 1994)).

Furthermore, under Fed. R. Civ. P. 9(b), the circumstances of fraud must be pled with particularity. The purpose of this requirement is to provide defendants with notice of the "precise misconduct" of which they are accused. *Seville Industrial Machinery v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).

CNA has met the heightened pleading requirements for mail fraud and wire fraud. In the RICO Case Statement, plaintiff was directed to describe the pattern of racketeering activity in detail, including the dates of the predicate acts, participants in those acts, and a description of the facts surrounding them. Attachment 1 to the RCS sets forth a detailed list of fraudulent drafts, including the designated payee, the dates, the amount, and the mailing address where defendant represented the drafts were to be sent. This information was obtained from the records Slonchka entered into Universal's computerized payment system, and by review of Universal's records and the cancelled checks. In some cases the payees were represented to be attorneys, but they were not.

Furthermore, Attachment 2 is a table of information related to the drafts, including the draft date and number, the payee, the amount, the underlying Universal workers' compensation claim number, and additional comments.  This exhibit includes information on thirteen drafts identified by the Federal Bureau of Investigation.  A third attachment charts information about the first 240 drafts identified in Attachment 2, and provides the total amount paid to each payee, the total sum of the drafts attributable to Universal's workers' compensation claims for which the defendant was responsible, the number of drafts written to the various payees, and the total amount of the drafts issued in each calendar year.

CNA has explained that some of these fraudulent drafts were mailed.  Slonchka spoke with the sports memorabilia dealers by phone in connection with those drafts, and entered false information into Universal's computerized payment system which was electronically transmitted over interstate wires.

Slonchka argues that CNA has not alleged two separate predicate acts, since both the mail and wire fraud allegations refer to the same check-issuing scheme.  He asserts that if all predicate acts derive from the same criminal scheme, episode, or objective, there can be no pattern, continuity, or differentiation.  Def.'s Br. at 10.  Defendant refers us to *Madden v. Gluck*, 815 F.2d 1163 (8th Cir. 1987); *DeVries v. Prudential-Bache Sec., Inc.*, 805 F.2d 326 (8th Cir. 1986); and *H.J. Inc. v. Northwestern Bell Tel. Co.*, 653 F.Supp. 908 (D.Minn. 1987) to support his position.  While this was certainly the state of the law at one time in the Eighth Circuit (and thus not binding on this jurisdiction), defendant's position was soundly rejected by the United States Supreme Court when it reversed the *H.J. Inc.* lower court decision.  *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989).  The Court explained that "[w]e find no support . . . for the proposition espoused by the Court of Appeals for the Eighth Circuit. .. that predicate acts of racketeering may form a pattern only when they are part of separate illegal schemes." *Id*. at 236-37.  On the contrary, RICO's pattern requirement may be met by a showing of "multiple predicates within a single scheme that were related and that amounted to, or threatened the likelihood of, continued criminal activity." *Id.*

We conclude that the 253 separate fraudulent drafts, each of which diverts funds from Universal to third party payees, establishes at least two underlying predicate offenses for purposes of the statute. Plaintiff has pled facts supporting its claim of mail and wire fraud with the particularity required under Rule 9 (b).

**CNA has established a pattern of racketeering activity showing both a relationship between the predicates and continuity.**

Predicate acts are related if they "have the same or similar purposes, results, participants, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.*, 492 U.S. at 240 n. 16. Continuity itself is "'both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.'" *Hindes*, 937 F.2d at 872 (quoting *H.J. Inc.*, 492 U.S. at 241). Closed-ended continuity may be demonstrated by alleging "a series of related predicates extending over a substantial period of time." *H.J. Inc.* 492 U.S. at 242. Where there is no threat of continuing, long-term racketeering activity, continuity is assessed by considering the actual duration of the predicate acts. *United States v. Pelullo*, 964 F.2d 193, 209-10 (3d Cir. 1992)(citing *Hindes v. Castle*, 937 F.2d 868, 873-875 (3d Cir. 1991)).

Defendant's position is that CNA has failed to show relatedness and continuity because the complaint only alleges a single wrongful act ("the alleged 'fraudulent' issuing of checks") performed by one individual to only one victim. (Def.'s Br. at 12). Defendant offers no further argument or support for this position.

We find that defendant's argument is without merit. CNA has alleged facts that show relatedness. As we have previously stated, the 253 allegedly fraudulent drafts constitute separate wrongful acts. These 253 acts share the purpose of defrauding Slonchka's employer, Universal, and were designed to divert funds from Universal to a group of third party payees. Slonchka used the same general method for each act, entering false information into the company's electronic claims payment system and paying false claims or causing them to be paid. We have no difficulty determining that the underlying predicate acts in this case are related within the meaning of the

RICO statute.

We also conclude that the plaintiff has alleged facts which, if proved, show continuity. The Third Circuit has declined to develop a bright line test for determining whether conduct has occurred over a "substantial period of time." *Pelullo,* 964 F.2d at 209-210. The Supreme Court has cautioned that predicate acts "extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *H.J., Inc.*, 492 U.S. at 242. Courts in this jurisdiction have concluded that a period of less than one year does not show a substantial period of time. *Tabas v. Tabas*, 47 F.3d 1280, 1293 (3d Cir. 1995); *Pelullo*, 964 F.2d at 210 (collecting cases). However, the Third Circuit has found that conduct has occurred over a substantial period of time where the predicate acts took place over far shorter time frames than the five-year period alleged in this case. *See, e.g. Tabas*, 47 F.3d 1293-4 (three years and one-half years); *Pelullo*, 964 F.2d at 209-210 (19 months). CNA has alleged that Slonchka's conduct occurred over more than five years, between April 15, 1997 and April 26, 2002. (Am. Compl. at ¶ 8). We are satisfied that this is a substantial period of time, and that the element of continuity is met.

CNA has alleged facts that, if proved, would establish a pattern of racketeering activity showing both a relationship between the predicate acts and continuity, and defendant's motion to dismiss will be denied as to this ground.

**CNA has established causation**

Finally, in order to establish the fourth element of a violation of Section 1962 (c), the plaintiff must show causation between the activity and the injury. Merely committing the predicate offense does not violate Section 1962 (c). *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Even if the underlying predicate acts formed a pattern of racketeering activity, they must also have directly caused the plaintiff's injury. "[T]he requirement of injury in one's 'business or property' limits the availability of RICO's civil remedies to those who have suffered injury-in-fact." *Holmes v. SIPC*, 503 U.S. 258, 277 (1992). There must be a direct relationship between the injury asserted and the injurious conduct alleged, and only where proximate cause exists does a plaintiff

12

have standing to raise a RICO claim. *Id.* Put another way, a RICO plaintiff who complains of "harm flowing directly from the misfortunes visited upon a third person by the defendant's acts" may not recover under § 1964 (c). *Holmes*, 503 U.S. at 268-69.

The standard for determining whether there is proximate cause in a RICO case requires the court to consider three factors: (1) the directness of the injury; (2) the difficulty of apportioning damages among potential plaintiffs; and (3) the possibility of other plaintiffs vindicating RICO's goals. *Allegheny General Hospital v. Philip Morris, Inc.*, 116 F.Supp.2d 610 (W.D.Pa. 1999) (citing *Holmes*, 503 U.S. at 268-69. The *Allegheny General* court explained the significance of these factors: "(1) the more indirect the injury, 'the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to [defendant's wrongdoing] as distinct from other, independent factors'; (2) allowing recovery by indirectly injured persons would require complicated rules for apportioning damages; and (3) direct victims could generally be counted on to vindicate the policies underlying the relevant law." *Id*. at 617 (quoting *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 932 (3d Cir. 1999) (internal citations omitted)).

Slonchka concedes the second and third factors, and argues only that CNA cannot show RICO causation, because, as a subrogee, the plaintiff has been only indirectly injured. He makes no further argument to support this position. (Def.'s Br. at 13).

We agree with the plaintiff that CNA has alleged a concrete, actual injury which is directly related to the defendant's alleged conduct. Pursuant to an employee fidelity policy CNA issued to Universal, CNA paid Universal $117,881.87 to cover losses caused by Slonchka's conduct. This is a direct loss. The fact that CNA is asserting its claim because it has subrogation rights does not affect its standing under the RICO statute. A racketeering injury to a subrogee is an injury to the subrogee's property under RICO. *See Federal Ins. Co. v. Ayers*, 741 F.Supp. 1179 (E.D.Pa. 1990) (concluding that the plaintiff had standing to sue under RICO because it had subrogation rights pursuant to a crime insurance policy; plaintiff had paid amounts due to the insured under the

13

policy, and the insured had issued an assignment of claim).

The plaintiff has alleged causation as required to have standing to sue under the RICO statute, and defendant's motion to dismiss will be denied as to this ground.

### (2) Section 1962 (d)

Defendant also argues that we must dismiss CNA's Section 1962 (d) claim, which alleges conspiracy under the RICO statute, for failure to properly state a claim. Defendant argues that CNA has failed to state a claim for conspiracy because "[s]ince [CNA] cannot even identify the participants in the alleged enterprise with enough certainty as to name them as Defendants, Plaintiff has not pled and cannot plead that the participants 'agreed" and "conspired" to engage in fraud." (Def.'s Br. at 8).

Under Section 1962 (d), "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section." 18 U.S.C. § 1962 (d). To plead conspiracy, a plaintiff must "set forth allegations that address the period of the conspiracy, the object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose. Additional elements include agreement to commit predicate acts and knowledge that the acts were part of a pattern of racketeering activity." *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1166-67 (3d Cir. 1989).

We agree with the plaintiff that there is no requirement to name the co-conspirators as additional defendants in order to state a claim under Section 1962 (d). The amended complaint and RCS sufficiently set forth a time period for the conspiracy, from April 15, 1997 through April 26, 2002; allege that the object of the conspiracy was to divert Universal's funds for fraudulent purposes; and aver numerous actions taken to achieve that purpose, including issuing, endorsing, and negotiating fraudulent bank drafts and exchanging the funds for sports memorabilia, cars, and kickbacks. From the scheme alleged, including repeated payments made to a number of individuals, we may reasonably infer that Slonchka's alleged co-conspirators were aware of a conspiracy and knew that the acts were part of an overall pattern of racketeering activity.

14

We find that CNA has alleged a cause of action for RICO conspiracy under Section 1962 (d), and will deny the defendant's motion to dismiss as to this claim.

### D. Failure to Plead Common Law Fraud with Specificity

Defendant also argues that Count II of the complaint must be dismissed because it fails to state a cause of action for common law fraud. To state a claim for fraud under Pennsylvania law, plaintiff must allege (1) an intentional misrepresentation, (2) which is material to the transaction at hand; (3) made falsely; (4) with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *Perlberger v. Perlberger*, 32 F.Supp.2d 197, 209-10 (E.D. Pa. 1998) (*citing Gibbs v. Ernst*, 647 A.23d 882, 889 (Pa. 1994)).

Defendant asserts that Universal cannot establish that it reasonably relied on any misrepresentation. Slonchka insists that Universal was in a position to know the facts regarding the checks, and that since some of the checks were issued to the same individuals after four and a half years it is reasonable to infer that the insurer acquiesced to the issuance of these checks. (Def.'s Br. at 14.)

This argument is without merit. The facts alleged in the amended complaint and RCS show that Slonchka went to great lengths to conceal these checks from Universal, including selecting workers' compensation claims which had not been opened and closed in the same calendar year and thus weren't subject to Universal's regular audit system. It is not a reasonable from these alleged facts that Universal knew or should have known about the underlying fraud.

We have previously concluded that CNA has met the heightened pleading requirements set forth in Fed.R.Civ.P. 9(b). (*See supra* pp. 9-10) The allegations of fraud must be pled with particularity, so that the defendant has notice of the specific conduct complained of. *Seville*, 742 F.2d at 791. In this case, the amended complaint and RCS, which allege and categorize 253 checks, establish that the plaintiff justifiably relied upon the defendant's misrepresentations so as

15

to survive a motion to dismiss on this ground.

### IV. Conclusion

For the reasons set forth above, we will deny defendant's motion to dismiss Counts I and II of the second amended complaint. An appropriate Order follows.


|   August 18, 2005   |  /s/ Maurice B. Cohill, Jr.  |
|---|---|
| Date | Maurice B. Cohill, Jr. |
| | Senior United States District Judge |

#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CONTINENTAL CASUALTY COMPANY, a/k/a CNA, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 04-1587 ) |
| RICHARD SLONCHKA, | ) ) |
| Defendant. | ) |

### ORDER

AND NOW, to-wit, this 18th day of August, 2005, for the reasons set forth in the accompanying Opinion, it is hereby ORDERED, ADJUDGED, and DECREED that defendant's motion to dismiss the second amended complaint (Doc. 14) be and hereby is DENIED.

Defendant is directed to file an answer to the second amended complaint. A case management conference will then be scheduled, at which time we will consider defendant's motion for abstention and/or to stay proceedings.

IT IS FURTHER ORDERED that:

1. Plaintiff's motion for extension of time (Doc. 20) be and hereby is GRANTED.

2. Defendant's motion to strike plaintiff's brief in opposition to defendant's motion to dismiss the second amended complaint (Doc. 18) be and hereby is DENIED.

3. Defendant's motion for leave to amend proposed order (Doc. 21) be and hereby is DISMISSED AS MOOT.

       /s/ Maurice B. Cohill, Jr.
       Maurice B. Cohill, Jr.
       Senior United States District Judge